v.

STATE of Indiana, Appellee–Petitioner.

No. 49A02–0403–JV–289.

Court of Appeals of Indiana.

Nov. 30, 2004.

---

Danielle L. Gregory, Indianapolis, IN, Attorney for Appellant.

Stephen R. Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

GARRARD, Senior Judge.

C.S. was adjudged a delinquent pursuant to a plea agreement. At the dispositional hearing on December 3, 2003, he was made a ward of the Department of Corrections for housing in any correctional facility for children. This order was then suspended, and he was placed upon strict probation. He first met with his probation officer five days later on December 8. At that time he gave a urine sample for a drug screen. A week later the probation officer received the results of the screen, which showed positive for cocaine metabolites. She then filed a petition to revoke probation.

During a hearing on December 19, 2003, the court ordered C.S. detained. He remained in detention for thirty-one days until his dispositional hearing on January 20, 2004.

At the January hearing the probation officer was the only witness called by the state, and C.S. presented no testimony. The probation officer testified regarding the process employed by her in collecting urine samples from her probationers. She

also testified concerning her lack of knowledge of the actual testing procedures employed. She testified that she received back the results of the urine screen of December 8, and "[t]he results stated that [C.S.] tested positive of cocaine." (Tr. 30). The report was not introduced in evidence, and no other evidence of the presence of cocaine was presented.[1]

Upon this evidence the court found that C.S. had violated the terms of his probation, awarded wardship to the Indiana Department of Correction for housing in any correctional facility for children until the age of 21, unless sooner released by the Department and recommended, inter alia, that C.S. be committed for a period of six months.

■ On appeal C.S. challenges the propriety of permitting the probation officer's limited knowledge to establish the results of the drug screen. We find the answer to his contentions in *Cox v. State*, 706 N.E.2d 547 (Ind.1999). In that decision the court noted that probation revocation proceedings are governed by a preponderance of the evidence standard and are not subject to the Indiana Rules of Evidence. It noted that while defendants in such proceedings are entitled to due process, they are not entitled to the panoply of rights afforded a person prior to conviction. The court held that in revocation proceedings the rule against hearsay does not apply and the trial court might consider any relevant evidence bearing some substantial indicia of reliability. 706 N.E.2d at 550–551. Accordingly, the court held that the testimony of the operations manager of the work release center regarding a urine screening test for marijuana and his sponsoring of the exhibit showing the test results was proper.

Here the probation officer testified in detail about how the sample was secured and sealed, how it was transmitted to the laboratory and how she received the results. She followed a standard process. We believe this provided a substantial indicia of reliability and the evidence was properly admitted.

■ C.S. contends he was denied his due process rights to confront his accuser and cross examine the witnesses against him, but that question was resolved against him in *Cox, supra*. He confronted the probation officer and skillfully cross examined her concerning her knowledge and lack of knowledge about the test. That is what due process requires under these circumstances since the hearsay nature of the testimony was not objectionable.

■ C.S. next contends that the evidence was insufficient to establish a probation violation. In considering this claim we are reminded that the burden of proof upon the state was a preponderance of the evidence, and that our appellate review will not reweigh the evidence or redetermine the credibility of witnesses. If there is substantial evidence of probative value to support the court's decision, we will affirm. *Cox*, 706 N.E.2d at 551.

It is axiomatic that to violate one's probation, one must perform some prohibited act, or fail to perform some required action, during the period of probation. Ordinarily, the facts are such that there is no dispute regarding this element of the state's claim. But here the facts are different.

Here the urine test was taken only five days after C.S. was placed on probation.

1. The probation officer testified that a second urine screen was taken on December 14 or 15, but the results of that test do not appear.

We know that cocaine metabolites appear in the urine for some time period after cocaine has been ingested.

The state produced no evidence whatever of what that time period might be. There was no prior screen establishing that C.S. was free of drugs, so that subsequent use might be inferred. There was not even any evidence of the amount, or concentration, of the metabolite in the urine.

Because the sample was taken only five days after C.S. was placed on probation, we are left to merely speculate whether he used cocaine before or after probation was imposed. We are unable to say that the evidence favorable to the decision, and the reasonable inferences therefrom, are sufficient to establish by a preponderance of the evidence that C.S. used cocaine at some time after he was placed on probation.

It follows that the decision revoking probation must be reversed and the case remanded for such further proceedings as may be necessary.[2]

Reversed and remanded.

ROBB, J., and BAILEY, J., concur.

---

2. Since we find it necessary to reverse, we need not address the other issue raised by C.S.