**In the Matter of M.T.**

**M.T., Appellant–Defendant,**

v.

**State of Indiana, Appellee–Plaintiff.**

No. 49A04–0908–JV–484.

Court of Appeals of Indiana.

June 16, 2010.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, George F. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

The trial court modified M.T.'s probation and committed him to the Department of Correction after a hearing at which the State presented no evidence of the probation violations it alleged. That violated M.T.'s due process rights, and we accordingly reverse.[1]

## FACTS AND PROCEDURAL HISTORY

In March of 2009, M.T. admitted he committed an offense that would be criminal trespass if committed by an adult. At that time he was on probation for a separate true finding. The juvenile court accepted M.T.'s admission of delinquency, ordered a suspended commitment to the Department of Correction, and required M.T. to complete treatment at Kokomo Academy as a condition of probation.

On May 21, 2009, the probation department filed an information alleging four probation violations. The court held a modification hearing on July 13. It heard argument about appropriate placements for M.T., but the State presented no evidence of the probation violations it alleged. The State did present testimony about an incident on May 14 during which staff had to restrain M.T., but that incident was not alleged as a probation violation. The court ordered M.T. committed to the Department of Correction.

## DISCUSSION AND DECISION

The juvenile court has wide latitude and great flexibility in its dealings with juveniles. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind.Ct.App.2008). The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will be reversed only if there has been an abuse of that discretion. *Id.* The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *Id.* An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. *Id.*

The juvenile court system is founded on the notion of *parens patriae*, which allows the court to step into the shoes of the parents. *In re K.G.*, 808 N.E.2d 631, 635 (Ind.2004). *The parens*

---

1. We heard oral argument April 23, 2010, at Corydon Central High School. We thank the School and the local bar for their hospitality, and we commend counsel on the quality of their oral advocacy.

*patriae* doctrine gives juvenile courts power to further the best interests of the child, "which implies a broad discretion unknown in the adult criminal court system." *Id.*

Where, as here, the State moves for modification of a dispositional decree, the probation officer must give notice to the persons affected and the juvenile court must hold a hearing. Ind.Code § 31–37–22–3. The statute does not specify what the hearing must include.

We addressed what a "hearing" means in the adult probation revocation context in *Weatherly v. State,* 564 N.E.2d 350, 352 (Ind.Ct.App.1990). At that time the applicable statute required the court to "conduct a hearing concerning the alleged probation violation," which the State was obliged to prove "by a preponderance of the evidence." Ind.Code § 35–38–2–3 (1985). We held:

> The statute clearly contemplates an evidentiary hearing. In addition, a person on probation is entitled to certain due process rights, including, among other rights, disclosure of the evidence against him. An informal conversation between the judge and the parties present is insufficient under both the statute and due process concepts.

*Weatherly,* 564 N.E.2d at 352. *See also Hunt v. Shettle,* 452 N.E.2d 1045, 1050 (Ind.Ct.App.1983) (holding, in the context of administrative hearings, that a hearing is "a proceeding of relative formality held in order to determine issues of fact or law *in which evidence is presented and witnesses are heard*") (emphasis supplied).

The statute governing modification of juvenile court dispositions, unlike the probation revocation statute we addressed in *Weatherly,* has no language addressing the evidentiary standard to be applied or any other wording to suggest the hearing is or is not "evidentiary." It provides only that "[i]f the motion requests ... modification [other than an emergency change in the child's residence], the probation officer shall give notice to the persons affected and the juvenile court shall hold a hearing on the question." Ind.Code § 31–37–22–3(b).

While the statute does not explicitly define the type of hearing required, our consideration of basic due process principles instructs us an evidentiary hearing is required. Our Supreme Court addressed the extent of a juvenile's constitutional rights in a case involving competency to stand trial:

> A juvenile charged with delinquency is entitled to have the court apply those common law jurisprudential principles which experience and reason have shown are necessary to give the accused the essence of a fair trial. Without question, these include the right to adequate notice of the charges, appointment of counsel, the constitutional privilege against self-incrimination, and the right to confront opposing witnesses.... "[N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone." ... Principles of fundamental fairness require that this right [not to be tried unless competent] be afforded in juvenile proceedings.

*In re K.G.,* 808 N.E.2d at 635 (citations omitted). The court ultimately concluded: "The due process clause applies in juvenile proceedings, but a juvenile [court] must respect the informality and flexibility that characterize juvenile proceedings while insuring that such proceedings comport with the fundamental fairness demanded by the due process clause." *Id.* at 637 (quoting 47 Am. Jur. 2d *Juvenile Courts* 6 (1995)). *See also J.H. v. State,* 857 N.E.2d 429, 432 (Ind.Ct.App.2006) (recognizing due process right to written notice of the claimed violation of his probation that is sufficiently detailed to allow juvenile to prepare an

adequate defense), *trans. denied* 869 N.E.2d 455 (Ind.2007).

M.T. correctly notes "[a]llowing the State to remove a juvenile from probation and send him to [the Department of Correction] without submitting any evidence would never be allowed for an adult and does not satisfy any due process requirement fairly applied to juveniles." (Br. of Appellant at 7.) Allowing this modification, M.T. asserts, would give juvenile courts a green light to dispense with probation hearings and modify placements from probation to the Department of Correction for any reason, or for no reason: "If a hearing at which the State must present evidence is not required, one will never again be offered." (*Id.*)

■ The State does not address the extent of a juvenile's due process rights. Instead, it first argues M.T. waived any due process challenge because he did not object on that ground during the juvenile court proceedings. The State asserts:

> [R]ather than raising a constitutional claim at the hearing, M.T. acknowledged that it was not necessary that a violation be proven in order to modify his placement because "pursuant to statute the Court can modify placement at any time, on our motion, on the State's motion, or on your motion, Judge."

(Br. of Appellee at 3) (quoting Tr. at 103). The State offers no explanation why the fact a modification can be made on anyone's "motion" means presentation of evidence is unnecessary, and we decline its invitation to hold a juvenile waives due process protections merely by reciting to the court the substance of a controlling statute.[2]

■ M.T.'s counsel explicitly told the court at the hearing, "I would bring to your attention the fact that a violation was filed on May 21st alleging various incidents at Kokomo Academy and we did not hear one iota of evidence as to any of those paragraphs that were alleged in the May 21st violation." (Tr. at 103–04.) Thus M.T. did not waive the issue he now raises on appeal.

■ Next, the State argues a requirement that it present some evidence of a juvenile's wrongdoing before removing him from probation and sending him to the Department of Correction is "contrary to statute"[3] and inconsistent with the juvenile court's wide latitude and great flexibility in its oversight of juveniles. (Br. of Appellee at 9.) The standard for determining what due process requires in a juvenile proceeding is "fundamental fairness," *S.L.B. v. State*, 434 N.E.2d 155, 156 (Ind. Ct.App.1982),[4] and the process is "fundamentally fair," the State asserts without

---

2. Ind.Code § 31–37–22–1 provides:
   While the juvenile court retains jurisdiction under IC 31–30–2, the juvenile court may modify any dispositional decree:
   (1) upon the juvenile court's own motion;
   (2) upon the motion of:
     (A) the child;
     (B) the child's parent, guardian, custodian, or guardian ad litem;
     (C) the probation officer; or
     (D) the prosecuting attorney; or
   (3) upon the motion of any person providing services to the child or to the child's parent, guardian, or custodian under a decree of the court.

3. The State does not direct us to any such statute. As no statute appears to address the nature of a modification hearing in the juvenile probation context, it is not apparent that any statute is "contrary" to a requirement that evidence be presented at a modification hearing.

4. In *S.L.B.*, the juvenile court executed S.L.B.'s previously suspended commitment. The due process violation alleged there was lack of notice. S.L.B.'s trial court heard evidence.

explanation or citation to authority, when the juvenile has counsel, has notice a modification has been requested, and has an opportunity to be heard. We believe "fundamental fairness" in this setting requires more—specifically, some evidence of the wrongdoing on which the modification is premised.[5]

Our belief that evidence must be presented is bolstered by *C.S. v. State*, 817 N.E.2d 1279 (Ind.Ct.App.2004), where we reviewed whether the State provided sufficient evidence to revoke a juvenile's probation. Five days after he was placed on probation, C.S. provided a urine sample for a drug screen. That test was positive for cocaine metabolites, and the probation officer filed a petition to revoke probation. At the hearing, the only witness was the probation officer, who testified about the process she employed in collecting urine samples from her probationers and that C.S. tested positive, but who lacked knowledge of the testing procedures. The State did not introduce the report into evidence. The court found C.S. violated the terms of his probation and sent him to the Department of Correction.

We found that evidence insufficient to establish a probation violation: "It is axiomatic that to violate one's probation, one must perform some prohibited act, or fail to perform some required action, during the period of probation. Ordinarily, the facts are such that there is no dispute regarding this element of the state's claim. But here the facts are different." *Id.* at 1281. Because the sample was collected only five days after C.S. was placed on probation, because the State produced no evidence regarding how long after use co-

caine metabolites appear in the urine or how much metabolite was in C.S.'s urine, and because there was no prior screen establishing C.S. had been drug-free, "we are left to merely speculate whether he used cocaine before or after probation was imposed." *Id.* at 1282. Thus the evidence favorable to the decision, and the reasonable inferences therefrom, were insufficient to establish by a preponderance of the evidence that C.S. used cocaine at some time after he was placed on probation. *Id.*

While the statute does not explicitly define the type of hearing required, basic due process principles and case law precedent lead us to conclude a trial court may not modify a juvenile's disposition without a hearing at which the State presents evidence supporting the allegations listed in the revocation petition.

■ Finally, the State argues in the alternative that it offered sufficient evidence of M.T.'s probation violation. It did not. The State relies on an information dated May 21, 2009, in which it alleged M.T. "violated the conditions of probation/suspended commitment" by 1) committing theft and criminal mischief on May 20, 2009; 2) trying to enter an unauthorized area and grabbing a staff member's radio on May 9, 2009; 3) hitting a staff member and throwing chairs on May 10, 2009; and 4) cursing and threatening staff on May 11, 2009. (App. at 275–76.)

The trial court's dispositional order does not mention those offenses, and the record demonstrates, as M.T.'s counsel noted at the hearing "we did not hear one iota of evidence *as to any of those paragraphs that were alleged in the May 21st viola-*

---

5. At oral argument, the State continued to assert it was not required to present evidence before a court may move a juvenile to a more restrictive placement. But when asked what a juvenile would need to do if he or she desired a less restrictive placement, the State asserted, apparently without realizing the contradiction, the juvenile would need to present evidence of behavior changes to justify such a move.

*tion"* petition. (Tr. at 104.) The State did not respond to that statement at the hearing, and in its appellate brief offers no argument that evidence was presented to support any of the allegations in the information. We decline the State's invitation to hold mere allegations in an information serve as "evidence" of a violation justifying modification.[6]

Neither will we hold, as the State requests, that the disposition is supported by a report from Kokomo Academy that M.T. placed into evidence at the hearing. Under the heading "Progress" the report states, without explanation, M.T.'s "rule violations have included not following directions, aggression toward staff and peers, being disruptive, using foul and inappropriate language, and leaving the dorm/classroom without permission." (Ex. Vol. at 5.) Those general allegations of rule violations are not evidence of the specific allegations of misconduct on specific dates that the State asserted as M.T.'s probation violations. And, contrary to the State's assertion at oral argument, the general evidence of misconduct is not sufficient simply because it "fits the character" of the allegations in the petition.

For example, in *Johnson v. State*, 692 N.E.2d 485, 487 (Ind.Ct.App.1998), the State sought to revoke Johnson's probation alleging, among other things, he tested positive for cocaine. At the revocation hearing, in response to a question about how Johnson had performed on the terms of his probation, his probation officer made the general statement that "he did have some difficulty in regard to a drug screen that he received...." *Id.* Later during the

hearing, Johnson's counsel asked the officer, "[T]he allegation in your petition is that he had a positive screen, is that correct?" The officer replied it was and noted "testing positive would be a violation of probation at any time." *Id.* The State offered "no further evidence of a positive screen for cocaine, including the test results of the drug screen ... 'cocaine' was never specifically mentioned during the hearing." *Id.* We concluded "such limited testimony does not constitute substantial evidence of probative value" and was insufficient to support the conclusion Johnson had tested positive for cocaine use in violation of the conditions of his probation. *Id.*

Similarly, in *Tillberry v. State*, 895 N.E.2d 411, 417 (Ind.Ct.App.2008), the State filed a petition to revoke probation alleging Tillberry had been arrested for possession of marijuana, and the trial court revoked his probation stating, "he has a new case." We found the evidence was insufficient to support revocation of probation:

> Evidence must be presented from which the trial judge could reasonably conclude that the arrest was appropriate and that there is probable cause to believe the defendant violated a criminal law before the revocation may be sustained. The record before us is devoid of evidence regarding the circumstances leading to Tillberry's arrest for possession of marijuana; thus, there is no evidence from which the trial court could have found probable cause to believe Tillberry committed a crime while on probation. Because there is insufficient

---

**6.** At oral argument, the State asserted it presented evidence at the hearing—specifically a report from the juvenile probation officer that was filed with the court, and to which M.T. offered no corrections when given the opportunity. Because the State did not raise this argument in its initial brief to this court, that allegation is waived. *See, e.g., Briesacher v. Specialized Restoration and Const., Inc.*, 888 N.E.2d 188, 196 (Ind.Ct.App.2008) (any argument an appellant fails to raise in his initial brief is waived for appeal).

evidence to support such a finding, revocation on that basis was error.

*Id.* (citation omitted).

In the case before us there was not even "limited testimony" of the type in *Johnson.* Thus the State did not present evidence justifying modification of M.T.'s placement. *See also C.S.,* 817 N.E.2d at 1282 (finding evidence insufficient to establish by a preponderance of the evidence that juvenile had violated probation).

It was a due process violation to remove M.T. from probation and send him to prison when the State presented no evidence in support of the probation violations alleged as a basis for the modification. We accordingly reverse the modification.

Reversed.

BAILEY, J., and BROWN, J., concur.